BOYD, Justice.
These consolidated cases are before us on petition for writ of certiorari to the Florida Public Service Commission to review Orders Numbered 8560 and 8561.
Order No. 8560 grants the application of Greyhound Lines for extension of its certificate to authorize operation between St. Petersburg and Fort Lauderdale over a route including the Everglades Parkway, also known as Alligator Alley. Tamiami Trail Tours opposed Greyhound’s application on the ground that its certificate includes the same authority and route as that sought in Greyhound’s application.
The Commission’s Order No. 8561 grants the application of Tamiami Trail Tours to operate over seven (7) routes in Central Florida, routes formerly served or sought to be served by Greyhound Lines, Inc.
*5 The Commission in Order No. 8560 discusses the creation of duplicate authority as follows:
“Each carrier in their respective dockets is seeking certain routes over which the other carrier presently has exclusive authority. Each applicant has by substantial competent evidence proven that public convenience and necessity requires the granting of its application so that non-existing single-line bus service can be provided between the same general areas. The granting of either application would create operations over duplicate routes. As protestants, each carrier opposed the creation of duplicate authority, contending that such action would adversely affect its existing operations and revenues. It is readily apparent that the carriers have placed themselves in conflicting positions. To grant one and deny the other could result in less overall service than is presently provided and this would not be in public interest. The Commission recognizes that two separate dockets are involved. However, because of the similarity of service that would be made available by the granting of either application, the Commission is of the opinion one cannot be viewed without full consideration being given to the other. The Commission further recognizes that regard must be given to the rights of protestant and existing service, but he has the responsibility of seeing that adequate transportation services are developed. With this as a basic premise, the Commission concludes that the bus transportation needs of the public would best be served by the granting of both the applications heretofore discussed. Such action would provide single-line service throughout the major areas of Florida by two recognized and qualified bus carriers whose services should compliment each other. Further, such action would provide each carrier with new sources of revenue which would sufficiently diminish if not overcome any adverse effect that might result from duplicate authority. For that matter, these carriers are not strangers to duplicate routes as they presently operate over the same route between Tampa and Tallahassee, with each company operating numerous schedules daily with no reduction in service in recent years. * * * ”
One unique aspect of these proceedings should be mentioned. The Alligator Alley route became available for the first time on January 15, 1968, the date the highway was opened for traffic. Prior to the opening of the highway, Tamiami and Greyhound filed applications for authority to operate over that route when it was opened. Tamiami was granted temporary authority to operate over the new highway on January 9, 1968. The Commission ultimately granted the applications of both Tamiami and Greyhound to serve over the Alligator Alley route.
Florida Statutes § 323.03(3) (c), F.S.A. provides:
“When application is made by a motor carrier for a certificate to operate as a common carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the commission.”
The question is whether under the above-quoted statute the first applicant for a new route should be given the opportunity to demonstrate its ability to adequately serve the new route before a competing carrier’s application is granted. We feel that the Public Service Commission has properly interpreted the Statute which, by its terms, does not apply to new routes not being served. Here, the Commission was able to determine in advance that public convenience and necessity would require more than one bus line to serve passengers traveling a new super highway such as Alligator Alley or provide a new service. The ability of the carrier to provide *6 such service can be determined in this case by evaluating the previous service given by these competing bus lines in contiguous areas. To wait for a performance record by the first applicant in order to establish public convenience and necessity might cause unnecessary hardship to the public. We agree with the following statement of the Commission:
“Although Chapter 323, Florida Statutes [F.S.A.], does afford considerable protection for existing certificate holders against competition, it does not guarantee or contemplate a complete monopoly over public convenience and necessity for a new service being shown. Where a competing service is justified, it generally results in a better service to the public.”
The record shows public convenience and necessity were established by both applicants as to all additional areas of service granted to them by the Public Service Commission. The rapid growth of this State requires that transportation keep in step with this constant development and population increase. We cannot retard progress and inconvenience our people by waiting for urgent need or crisis to be proved before responding to the need for more public transportation.
Accordingly, the petitions are denied.
It is so ordered.
ROBERTS, DREW, THORNAL, CARLTON and ADKINS, JJ., concur.
ERVIN, C. J., concurs specially with opinion.